United States District Court
Southern District of Texas
**ENTERED**
August 30, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ELMER LOUISE LINDLEY, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:19-CV-02733 |
| § | |
| MONTGOMERY COUNTY, TEXAS § | |
| and § | |
| LT. RICHARDS § | |
| and § | |
| SGT. JAMES DODSON, *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Before the Court is the defendants', James Dodson (Dodson), Andrew Hilgers (Hilgers), Jeremiah Richards (Richards), and Joshua Wright (Wright) (the "defendants"), Rule 12(b)(6) motion to dismiss (Dkt. No. 72). Also before the Court is the plaintiff's, Elmer Louise Lindley, individually and as administrator of the estate of Phillip Tucker, response (Dkt. No. 79), and the defendants' reply (Dkt. No. 80). After a review of the documents, the attachments, and the plaintiff's amended original petition, the Court determines that the motion should be GRANTED IN PART and DENIED IN PART.

**II.     FACTUAL BACKGROUND AND CONTENTIONS**

On July 6, 2020, the Court dismissed the plaintiff's second amended complaint for failure to state a claim (Dkt. No. 47). With leave of Court, the plaintiff subsequently filed a third amended complaint (Dkt. No. 68). Because the new complaint largely restates the plaintiff's previous factual allegations, here the Court focuses on the new allegations against each defendant. These allegations are taken as true for the purposes of this motion.

2

On September 25, 2017, Phillip Tucker (Tucker) was booked into the Montgomery County Sheriff's Office (MCSO) jail after arrest. Three days later, at approximately 12:30 PM, MCSO personnel moved Tucker to a single cell room and placed him in a restraint chair. Wright and Dodson found Tucker unresponsive at 4:33 PM that day. After being transported to the Conroe Regional Hospital, Tucker was pronounced dead at 10:16 PM. Leading up to his death, Tucker suffered from renal failure brought on by dehydration and alcohol withdrawal.

The plaintiff makes the following specific allegations against each of the defendants. On the morning of September 28, 2017, defendant Richards observed Tucker speaking nonsensically, hallucinating, and banging into the walls of the "jail pod" (or group) cell. Richards later stated in an affidavit that, in his 16 years working in corrections, he had seen many inmates "detoxing" from alcohol or other substances. He further stated that Tucker's behavior and hallucinations led him to believe that Tucker "may be detoxing." Richards asked the intake nurse if Tucker was on "detox protocol," but she did not know. Around 12:30 PM, Richards determined that Tucker should be put in a restraint chair in a single cell and was present as this occurred. At some point, Richards entered the infirmary and requested that a nurse or medical personnel evaluate Tucker. It is unclear whether he was ever evaluated.

Defendant Dodson helped secure Tucker in the restraint chair inside the single cell. He told investigators that Tucker "appeared to be having this psychosis that I would associate with detoxing." Dodson also told investigators that, while in the single cell, Tucker had a "catatonic stare" and that his skin was "grayish/bluish." During Tucker's four-hour isolation, Dodson looked inside the cell three times and, at 2:56 PM, went inside Tucker's cell to upright him after the restraint chair tipped over. Dodson did not request medical intervention for Tucker until he and Wright found him unresponsive at 4:33 PM.

The plaintiff does not allege that defendant Wright was present when Tucker was secured in the restraint chair. However, Wright looked inside Tucker's cell four times during the four hours of his isolation. Wright later recalled that, prior to his isolation, Tucker was speaking loudly and hallucinating. He did not request any medical intervention for Tucker until he and Dodson found him unresponsive inside the cell. The plaintiff does not allege that Wright knew or should have known that Tucker was undergoing alcohol withdrawal.

Hilgers had three years' experience working in the MCSO jail. Around 9 AM on September 28, he observed Tucker banging on the jail pod door. He later helped secure Tucker in the restraint chair when he was moved to the single cell. Hilgers observed Tucker while in the single cell on six occasions and helped upright him twice. The plaintiff does not allege that Hilger knew or should have known that Tucker was undergoing alcohol withdrawal.

The plaintiff also alleges that jail's intake forms, which screened for risk of alcohol withdrawal, indicated that Tucker was a heavy drinker and had experienced alcohol withdrawal before. Additionally, the plaintiff includes photographs of Tucker's alleged injuries from the restraint chair and the warning stickers attached to the chair which recommend that a person not be left in the chair for more than two hours.

The plaintiff claims that the defendants acted with deliberate indifference when they failed to provide Tucker with medical attention, despite being aware that he was experiencing alcohol withdrawal. The plaintiff also claims that the defendants used excessive force against Tucker by placing him in a restraint chair for longer than reasonably necessary, and that such restraint caused Tucker pain and mental anguish and, when combined with a lack of medical attention, resulted in his death. The defendants move to dismiss the plaintiff's third amended complaint, asserting that

none of the conduct alleged on the defendants' part states a claim for either deliberate indifference or excessive force.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" A court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

### IV.   ANALYSIS AND DISCUSSION

The plaintiff alleges that the defendants violated Tucker's civil rights under Section 1983 when they (1) acted with deliberate indifference by failing to monitor him in the restraint chair and denying him access to life-saving medical attention, despite being aware of his alcohol withdrawal, and (2) used excessive force by keeping him in a restraint chair longer than reasonably necessary and without proper monitoring. The defendants contend that the plaintiff fails to state a claim for

4

deliberate indifference or excessive force and that, even if they did, qualified immunity bars their suit against the defendants. *See Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). The Court will address these contentions in turn.

    a.    *Whether the Plaintiff Has Stated a Claim for Deliberate Indifference*

The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of confining officials." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing, *inter alia*, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). In order to demonstrate subjective deliberate indifference, a plaintiff must present evidence that: "(1) each defendant had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn; (2) that each defendant actually drew that inference; and (3) that each defendant's response to the risk indicates that the [defendant] subjectively intended that harm occur." *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (internal citation and quotations omitted). Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm. *See Hare v. City of Corinth*, 74 F.3d 633, 645, 649–50 (5th Cir. 1996) (en banc). Moreover, "[d]eliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

The Court is of the opinion that the plaintiff has stated a claim for deliberate indifference against defendants Richards and Dodson. Richards observed Tucker speaking nonsensically, banging against his cell door, and exhibiting hallucinatory behavior. Further, Richards' affidavit demonstrates that he believed Tucker's behavior was consistent with alcohol withdrawal. The plaintiff's complaint suggests that Richards did not procure medical attention for Tucker's withdrawal, which allegedly led to his death. Similarly, during his interactions with Tucker,

defendant Dodson observed Tucker exhibiting what he later described as psychosis, as well as a catatonic stare and "grayish/bluish" skin. He believed that the "psychosis" was related to alcohol withdrawal. The plaintiff further alleges that Dodson sought no medical attention for Tucker's withdrawal until he found Dodson unresponsive in the cell. The plaintiff's allegations against Richards and Dodson, if true, raise his right to relief for deliberate indifference above a "speculative level." Therefore, Richards' and Dodson's motion to dismiss the deliberate indifference claim should be denied.

In light of the admissions by Richards and Dodson, including their experience, the Court infers that the qualified immunity bar is unavailable to them. The Fifth Circuit has held that at least some medical conditions related to severe substance withdrawal are "serious medical needs" that trigger a pretrial detainee's Fourteenth Amendment right to be free from deliberate indifference by confining officials. *See, e.g.*, *Thompson*, 245 F.3d at 457 ("Clearly established law forbids a significantly exacerbating delay or a denial of medical care to a detainee suffering from [delirium tremens].[1]").

By contrast, the deliberate indifference claim against defendants Wright and Hilgers should be dismissed. While the plaintiff alleges that Wright and Hilgers observed Tucker acting erratically during their interactions with him, the plaintiff does not allege that they understood what they were observing, *i.e.*, alcohol withdrawal. Thus, because the plaintiff alleges no facts to suggest that Wright and Hilgers actually inferred that Tucker was at substantial risk of serious harm from alcohol withdrawal, the plaintiff's deliberate indifference claim against them fails and must be dismissed.

---

[1] Delirium tremens is "a severe, sometimes fatal, form of [delirium] due to alcohol withdrawal following a period of sustained intoxication." STEDMAN'S MEDICAL DICTIONARY 506 (28th ed. 2006).

6

b. *Whether the Plaintiff Has Stated a Claim for Excessive Force*

To state a Fourth Amendment claim for excessive force, the plaintiff must allege facts capable of showing that Tucker suffered: (1) an injury; (2) which resulted directly and only from a use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). An excessive force claim under the Fourteenth Amendment requires a showing that the confining officials used force "maliciously and sadistically for the very purpose of causing harm to the pretrial detainee, rather than in a good faith effort to maintain or restore discipline." *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 477 (5th Cir. 2014) (internal citations and quotations omitted), *abrogated on other grounds*, *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S.Ct. 2466 (2015). In evaluating an excessive force claim under the Fourteenth Amendment, the Court must consider: the extent of injury suffered; the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response. *Id.*

The Court is of the opinion that the plaintiff has failed to state an excessive force claim against any defendant under either the Fourth or Fourteenth Amendment. Accepting the plaintiff's factual allegations as true, Tucker started to behave violently during his third day in jail. MCSO staff moved him to a single cell and placed him in a restraint chair. After he was restrained, the defendants observed him through the cell door window and occasionally entered the cell to upright him. The sole restraint on Tucker occurred while he was restrained in the restraint chair. As noted in the Court's previous dismissal order, given that Tucker's erratic behavior caused risk of harm to himself, the Court does not find the restraint applied to have been excessive and violative of the Fourth or Fourteenth Amendments. *See Blakeney v. Rusk Cnty. Sheriff*, 89 F. App'x 897, 899 (5th

Cir. 2004) (affirming a district court finding that the plaintiff's 20-hour confinement to a restraint chair did not violate his right to be free from punishment as a pretrial detainee, where the detainee was engaged in destructive behavior inside his jail cell).

Finally, the parties dispute whether the third amended complaint gave the defendants sufficient notice that the plaintiff was asserting a claim under the Eighth Amendment. Under the facts alleged, the plaintiff's only plausible Eighth Amendment claim would be for a violation of the right to be free from punishment as a pre-trial detainee. *See Hare*, 74 F.3d at 649–50. However, even if the plaintiff did provide the defendants proper notice of that claim, it would fail for the same reasons as the plaintiff's excessive force claim. Therefore, to the extent the plaintiff asserts an Eighth Amendment claim under *Hare*, that claim is dismissed.

**V.    CONCLUSION**

Based on the foregoing analysis and discussion, it is ORDERED that:

1. Defendants Jeremiah Richards' and James Dodson's motion to dismiss the plaintiff's deliberate indifference claims is DENIED;

2. Defendants Andrew Hilgers' and Joshua Wright's motion to dismiss the plaintiff's deliberate indifference claims is GRANTED;

3. The defendants' motion to dismiss the plaintiff's excessive force claims is GRANTED; and

4. The defendants' motion to dismiss the plaintiff's Eighth Amendment claims is GRANTED.

It is so ORDERED.

SIGNED on this 27th day of August, 2021.

_____
Kenneth M. Hoyt
United States District Judge